UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| Nilay Kamal Patel and Rachel A. Gladstone,<br><br>    Plaintiffs,<br><br>    v.<br><br>University of Vermont and State Agricultural College,<br><br>    Defendant. | Court File No.  5:20-cv-00061-gwc<br><br>**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION** |

## I. INTRODUCTION

Plaintiffs lack standing to pursue the only claim remaining in this lawsuit. In its March 15 and April 7, 2021 Orders, the Court dismissed or declared moot Plaintiffs' claims regarding payment of room and board, the comprehensive fee, and parking fees. Dkts. 57, 62. The sole surviving claim relates to money "paid for tuition" during the Spring 2020 semester. Dkt. 57 at 4.

But neither named Plaintiff paid any tuition to UVM during the Spring 2020 semester. Nilay Kamal Patel was a foreign exchange student enrolled in a program in which UVM expressly waived "tuition" for participants. And Rachel Gladstone's Spring 2020 tuition at UVM was paid for entirely by grants and scholarships. Neither Plaintiff paid a dollar in tuition to UVM in Spring 2020. As such, neither Plaintiff has standing under Article III to pursue tuition claims.

UVM is conscious of the appearance of serial motions to dismiss. It does not dispute that, at the outset, Plaintiffs appeared to have standing to bring at least some of the claims in this lawsuit. The Court has since dismissed those claims, however. And the standing requirement is continuous, can be raised at any time, and must be present for each claim and form of relief sought.

For this reason, and the reasons discussed below, the Court should dismiss the remaining claims in this case for lack of subject matter jurisdiction.

## II. FACTS

### A. Plaintiffs' Sole Remaining Claim Relates to Tuition

The only claim remaining in this lawsuit concerns payment of tuition. The Court's March 15 Order, in quoting Plaintiffs' pleadings, recognizes Plaintiffs' claim as one for payment of tuition no less than half a dozen times. Dkt. 57 at 4-5, 7, 10. Plaintiffs' Complaint similarly frames their claim as one related to payment of tuition. *See, e.g.*, Dkt. 1 ¶ 2 ("Plaintiffs and similarly situated students lost the benefits of in-person instruction . . . for which they had already paid for an entire semester."); *id.* ¶ 55 ("UVM retained tuition monies paid by Plaintiffs and other members of the Tuition Class, without providing them with the benefit of their bargain."); *id.* ¶ 74 ("Accordingly, under the circumstances, it would be unjust for UVM to retain monies paid for tuition for the Spring 2020 semester by Plaintiffs and other members of the Tuition Class.").

Indeed, the only reasonable construction of Plaintiffs' claim is one that rests on actual payment of tuition. It is the cornerstone of the relief Plaintiffs seek. *Id.* ¶ 2 ("Plaintiffs and similarly situated students seek refunds of the amounts they paid on a pro-rata basis as well as other damages to be elaborated on herein."); *id.* ¶ 29 ("Through this lawsuit, Plaintiffs seeks [sic]—for themselves and the other Class members—a partial refund of tuition representing the difference in value of live in-person instruction versus online learning . . . ."). It is the central predicate of their class claims. *Id.* ¶ 41 (defining tuition-based putative class as "[a]ll people who *paid tuition* for or on behalf of students enrolled in classes at UVM for the Spring 2020 semester" (emphasis added)); *id.* ¶ 33 ("Plaintiffs and Class members who *paid tuition* for live

in-person instruction in brick and mortar classrooms . . . did not get the full benefit of what they bargained for when they *paid tuition* for the Spring 2020 semester." (emphasis added)). And Plaintiffs affirmatively represent that *they* actually paid tuition. *Id.* ¶ 15 ("Plaintiffs and the Class members *paid the cost of tuition*, on-campus housing, meals, and fees for the semester in Spring of 2020.") (emphasis added); *id.* ¶ 53 ("Plaintiffs and other members of the Tuition Class fulfilled their end of the bargain when *they paid tuition* for the Spring 2020 semester . . . .") (emphasis added); *id.* ¶ 55 ("UVM retained *tuition monies paid by Plaintiffs* and other members of the Tuition Class . . . .") (emphasis added).

As the Court summarized, "[a]ccording to Plaintiffs, they did not get 'the full benefit of what they bargained for' when they paid tuition for the spring 2020 semester." Dkt. 57 at 5.

**B.     Neither Plaintiff Paid Tuition for the Spring 2020 Semester**

But neither Patel nor Gladstone paid tuition to UVM for the Spring 2020 semester. Patel was a foreign exchange student who, if he paid any tuition for Spring 2020, paid it to his home institution in accordance with the terms of the exchange agreement between his home institution and UVM. Gladstone received scholarships and, in the federal government's words, "free" grant money, that covered all of her Spring 2020 tuition.

      i.   <u>Patel Was a Foreign Exchange Student and Paid No Tuition To UVM</u>

As Patel alleges in his complaint, he is a "resident and citizen of the United Kingdom." Dkt. 1 ¶ 6. During Spring 2020 semester, Patel attended UVM through a foreign exchange program with his home institution, the University of Leeds ("Leeds"). (Declaration of Kim Howard, "Howard Decl." ¶ 4). Leeds is a public university in West Yorkshire, England. (*Id.*). The terms of UVM's and Leeds's exchange program are memorialized in an Exchange

Agreement. That Agreement provides a "one-for-one exchange" of students between the two institutions. (*Id.* ¶¶ 5, 7).

Relevant here, the Agreement expressly provides that students pay no tuition to their host institution. Specifically, it "enables students of the home institution to study at the host institution for a semester or academic year with *an exemption from paying any application or admission fees or tuition to the host institution*." (Howard Decl., Ex. A at 1 (emphasis added)). It further states that "[a]ll exchange students must register and *pay tuition*, comprehensive and other required fees at their *home institution*." (*Id.* at 5 (emphasis added)).

Nor does Leeds pay UVM (or vice versa) any tuition on behalf of exchange students like Patel. (Howard Decl. ¶ 7). Rather, the Agreement states that "[e]ach host institution will provide tuition and comprehensive fee waiver for the exchange students." (Howard Decl., Ex. A at 5). No tuition money changes hands between the institutions. (Howard Decl. ¶ 7). The arrangement is predicated only on direct student exchange—with UVM sending students to Leeds, and Leeds reciprocating by sending students to UVM. (*Id.*).

In accordance with this arrangement, Patel paid no tuition to UVM. (*Id.* ¶ 8). UVM does not have access to Patel's financial information at Leeds. (*Id.* ¶ 9). It thus does not know whether he attended school there on a scholarship, whether he paid tuition, how much, or whether he received any sort of refund from Leeds for the Spring 2020 semester.[1] (*Id.*). But any tuition he did pay was paid to Leeds and not UVM. (Howard Decl., Ex. A at 1 ("Students involved in the exchange shall pay all required application and admission fees and tuition to their home

---

[1] This raises an obvious issue with Patel seeking a tuition refund from UVM. Patel lacks standing to assert those claims, as outlined below. But even if he could somehow recover in this case, UVM is at a loss as to how it would even go about calculating Patel's refund.

institution.")). Indeed, while Patel did—pursuant to the Exchange Agreement (*id.* at 5-6)—pay the cost of his room and board, he has never paid a penny of tuition to UVM.

    C.  **Gladstone Paid No Tuition to UVM for the Spring 2020 Semester**

Gladstone similarly paid no tuition to UVM. The tuition owed for Gladstone's Spring 2020 semester was $20,640. (Declaration of Marie Johnson, "Johnson Decl." ¶ 4). But Gladstone received $1,082 more than that—a total of $21,722—in scholarship and grant money for that semester. (*Id.* ¶¶ 5-6). Specifically, Gladstone received the following in scholarships and grants:

- UVM Community Service Award - $1,250
- Merit Scholarship - $3,000
- McCree Family Scholarship - $3,000
- Presidential Scholarship - $8,500
- University of Vermont Grant - $2,150
- SEOG Grant - $900
- Pell Grant - $2,922

(*Id.* ¶ 5). The SEOG and Pell Grants are mostly or entirely federal grants. (Johnson Decl. ¶ 7). As the federal government itself explains, these "grants, unlike loans, are sources of free money that generally do not have to be repaid." Grants, Federal Student Aid, https://studentaid.gov/understand-aid/types/grants. Neither the SEOG Grant nor the Pell Grant need to be repaid, "except under certain circumstances." *See* FSEOG (Grants), Federal Student Aid, https://studentaid.gov/understand-aid/types/grants/fseog; Federal Pell Grants, Federal Student Aid, https://studentaid.gov/understand-aid/types/grants/pell. Those limited circumstances do not apply here, and, regardless, it is the educational institution's responsibility to notify students if they must repay part of their grant. Grants, Federal Student Aid, https://studentaid.gov/understand-aid/types/grants ("Your school will notify you if you must repay part of your grant."); (Johnson Decl. ¶ 7). UVM has not informed Gladstone that she must repay any part of her federal grants and will not do so. (Johnson Decl. ¶ 7).

Beyond the "free money" grants she received from the federal government, the remaining scholarships, grant, and award all came from UVM or endowed scholarships managed by UVM. (*Id.* ¶ 8). These scholarships do not need to be repaid. (*Id.*). And UVM will not require Gladstone—or any other student for that matter—to repay scholarships for the Spring 2020 semester due to UVM's move to remote learning. (*Id.* ¶ 9).

As is common amongst universities, UVM follows a set policy for crediting payments to student accounts. That policy is in writing and long predates this lawsuit. (*Id.* ¶ 10, Ex. A). It follows a set order of crediting payments to the account in accordance with an established hierarchy. That hierarchy requires that monies first go to the payment of tuition:

> Order of payment assignment/and reversal of write-off when payment is made after write-off:
> 1. Tuition
> 2. Comprehensive Fee
> 3. Room Charges
> 4. Meal Plan Charges
> 5. IRA Fee
> 6. Course and Lab fees
> 7. Health Insurance
> 8. Health Center fees
> 9. Penalties and Fines (i.e. library charges, parking fines, student conduct fines)
> 10. Late Fees
> 11. All other charges

(*Id.*, Ex. A). Because grant and scholarship money are guaranteed funds that must be used to be kept, UVM applies all grant and scholarship money to tuition first, then to the comprehensive fee, and down the account crediting hierarchy. (*Id.* ¶ 11). Thus, if a student covers the cost of attendance through a combination of scholarships and grants, as well as personal money or loans, the scholarships and grants are first applied to tuition, then the comprehensive fee, and so forth.

That is precisely what happened here—Gladstone's grants and scholarships went first to covering her tuition. (*Id.* ¶ 13). Those funds completely covered the cost of tuition, meaning that Gladstone paid no tuition to UVM for the Spring 2020 semester. (*Id.*).

### III. ARGUMENT

A.        **Legal Standard for Dismissal under Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to assert the defense that the Court lacks subject matter jurisdiction to hear a claim. "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Al-Khazraji v. United States*, 519 F. App'x 711, 713 (2d Cir. 2013). Federal courts also have an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). A party can raise a lack of standing motion at any time during the litigation. *Johnston v. Johnston*, 536 B.R. 576, 586 (D. Vt. 2015) ("[B]ecause it derives from the case or controversy requirement of Article III of the Constitution, the lack of standing may be raised at any time by any party or by the court *sua sponte*." (quotations omitted)); *Mancuso v. Consol. Edison Co. of N.Y.*, 130 F. Supp. 2d 584, 588 (S.D.N.Y. 2001) ("[T]he issue of standing can be raised on motion of a party or even *sua sponte* at any time during the litigation or appeal; it cannot be waived.").

A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based. In a fact-based motion, such as this one, the defendant may proffer evidence beyond the pleadings. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016). In opposing a fact-based motion, the plaintiff bears the burden of producing evidence to controvert the defendant's evidence "'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Id.* (quoting *Exch. Nat'l Bank of Chi. v.*

*Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)). A plaintiff opposing a Rule 12(b)(1) motion "cannot rest on the mere assertion that factual issues may exist." *Exch. Nat'l Bank of Chi.*, 544 F.2d at 1131. Instead, after the plaintiff "come[s] forward with evidence of [her] own to controvert that presented by the defendant[,] . . . the district court will need to make findings of fact in aid of its decision as to standing." *Carter*, 822 F.3d at 57. "In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists" by a preponderance of the evidence. *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002). When subject matter jurisdiction is faced with a factual attack, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

   **B.**  **Plaintiffs Lack Article III Standing to Assert Tuition Claims Against UVM**

   Plaintiffs lack standing under Article III to bring the claims remaining in this lawsuit. Article III standing has three elements: (1) the plaintiff must have suffered an injury in fact; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury is redressable by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs have no injury in fact because they did not actually pay any tuition to UVM in Spring 2020. Patel paid tuition, if at all, to Leeds. (Howard Decl. ¶ 8, Ex. A at 1). And Gladstone's tuition was covered completely either by UVM scholarships, grants, and awards or "free" federal grant money. (Johnson Decl. ¶ 13).

   Federal courts have dismissed actions for lack of standing in analogous settings. For example, in *Emery v. Roanoke City School Board*, the Fourth Circuit considered whether a plaintiff has standing to recover tuition that he or she never actually paid. 432 F.3d 294, 299 (4th Cir. 2005). The plaintiff sued under the Individuals with Disabilities Education Act, which

"allows for reimbursement of funds that the child or his parents may have expended to provide the education that was the school district's responsibility." *Id.* The defendant school board sought dismissal on the grounds that the plaintiff, a student, lacked standing to sue for reimbursement because he suffered no cognizable injury. *Id.* at 296.

The Fourth Circuit noted that the "[s]tanding doctrine requires that reimbursement should flow only to those who actually expend resources . . . ." *Id.* at 299. It held that the plaintiff lacked standing because he "failed to prove he satisfies the constitutional requirement that he suffer an injury in fact . . . ." *Id.* The court recognized that, "[c]rucially for the purposes of standing, [the plaintiff] suffered no out-of-pocket loss himself [and] . . . paid no money for the educational expenses incurred during the 1992-1993 school year." *Id.* Instead, the plaintiff's father's "medical insurance provided by his employer paid the [educational] expenses." *Id.* Ultimately, the appellate court determined that the plaintiff "failed to show how awarding him this amount would be anything other than a windfall." *Id.*

Other courts have adopted this reasoning as well, dismissing claims for tuition reimbursement because the plaintiff did not actually expend any money or suffer a monetary injury. *See, e.g.*, *Malone v. Nielson*, 474 F.3d 934, 937 (7th Cir. 2007) (dismissing claims for reimbursement because the plaintiff did not "incur[] the expense and suffer[] the subsequent monetary injury"); *Piedmont Behav. Health Ctr., LLC v. Stewart*, 413 F. Supp. 2d 746, 755-56 (S.D. W. Va. 2006) ("Ms. Doe and her son similarly failed to show an injury in fact. Ms. Doe readily acknowledged that she has not paid for any of her son's educational expenses."). Indeed, the Second Circuit applied the same reasoning in *E.M. v. New York City Department of Education*, finding that standing attaches where the plaintiff has effectively received a "loan" and

any recovery would not be a windfall but would instead permit repayment of "a debt incurred." 758 F.3d 442, 445 (2d. Cir. 2014).

And while UVM has not located any cases addressing this issue in the context of the COVID-19 pandemic, cases that have addressed standing likewise require the plaintiff to have actually paid tuition in exchange for attending in-person classes. *Meissner v. Syracuse Univ.*, No. 5:20-CV-839 (TJM/ATB), 2021 WL 1536676, at *4 (N.D.N.Y. Apr. 13, 2021) (dismissing claims for lack of standing because the plaintiffs "alleged injuries . . . derivative of those allegedly suffered by [others]"). Furthermore, although numerous courts in this Circuit have dismissed similar cases for lack of standing, *see id.* (collecting cases), courts that have found standing still require plaintiffs to have made some sort of payment to the university. *See Burt v. Bd. of Trustees of Univ. of Rhode Island*, No. CV 20-191-JJM-LDA, 2021 WL 825398, at *9 (D.R.I. Mar. 4, 2021) ("[I]n instances where [parents] *paid* tuition to their child's school, they stand to be injured by subsequent contractual violations." (emphasis added)).

These cases confirm that Gladstone lacks Article III standing to pursue claims against UVM for a tuition refund. The full cost of tuition for the Spring 2020 semester was covered by Gladstone's grants and scholarships. Assuming purely for the sake of argument that UVM had a legal obligation to issue a partial tuition refund for the Spring 2020 semester because of the shift to remote learning, Gladstone herself "suffered no out-of-pocket loss[,]" "paid no money" in tuition, and has "failed to show how awarding [her] this amount would be anything other than a windfall." *See Emery*, 432 F.3d at 299. And unlike the plaintiff in *E.M.*, Gladstone is under no legal obligation to repay any of the monies that covered her tuition. (Johnson Decl. ¶¶ 7-9). Gladstone has not suffered any cognizable injury in fact, and she therefore lacks standing to sue for a tuition refund.

The same is true of Patel. Patel did not pay any tuition to UVM in 2020. His claim fails for that reason alone. *See Emery*, 432 F.3d at 299. And while it is unclear whether Patel even paid tuition to Leeds, if he has any claim, it is against Leeds. *See Carter*, 822 F.3d at 55 (noting that, to satisfy the "causation" element of Article III standing, the injury must be "'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court[.]'") (quoting *Lujan*, 504 U.S. at 560).

### C.     Plaintiffs Cannot Rely on Their Initial Standing to Pursue This Lawsuit

Nor does the fact that Plaintiffs had standing to bring some of the claims originally at issue in this lawsuit give them standing to continue to assert claims for tuition that they never paid. UVM acknowledges that Patel paid room and board and Gladstone paid a portion of the comprehensive fee. But the Court has dismissed claims related to those charges. Dkts. 57, 62.

Courts regularly dismiss cases for lack of standing after dismissing the only claims for which the plaintiffs suffered an injury. *See, e.g.*, *Chan v. Mui*, No. 92 Civ. 8258 (MBM), 1995 WL 373318, at *1 (S.D.N.Y. June 22, 1995) (granting Rule 12(b)(1) motion to dismiss on the grounds that the plaintiff lacked standing to assert the remaining claims after the court granted a prior motion to dismiss with respect to other claims); *Frydman v. Experian Info. Sols, Inc.*, No. 14 Civ. 9013 (PAC) (FM) (HBP), 2017 WL 4221086, at *2-4 (S.D.N.Y. Sept. 21, 2017) (granting Rule 12(b)(1) motion to dismiss, concluding that the plaintiff lacked standing to pursue the remaining claims after the court granted the defendants' previous motion for summary judgment); *Gelb v. Fed. Rsrv. Bank of N.Y.*, No. 1:12-cv-4880 (ALC), 2016 WL 4532193, at *2-5 (S.D.N.Y. Aug. 29, 2016) (dismissing the sole remaining claim for lack of standing, upon the court's order to show cause, after the court separately granted the defendant's motion for

summary judgment with respect to all other claims). For that reason too, the Court should dismiss Plaintiffs' remaining claims for lack of standing.

## IV. CONCLUSION

For these reasons, UVM respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety.

Dated: April 23, 2021

OFFICE OF THE GENERAL COUNSEL

/s/ *Sharon Reich Paulsen*
Sharon Reich Paulsen – 5680
*Sharon.Reich.Paulsen@uvm.edu*

Office of the General Counsel
UNIVERSITY OF VERMONT
Waterman 357
Burlington, VT  05405-0160
Telephone:  +1 802 656 8530

FAEGRE DRINKER BIDDLE & REATH LLP

Andrew B. Murphy (*admitted pro hac vice*)
andrew.murphy@faegredrinker.com
Sean R. Somermeyer (*admitted pro hac vice*)
sean.somermeyer@faegredrinker.com

2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402
Telephone: +1 612 766-7000

Attorneys for Defendant