UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 JUL 22 PM 1:52

CLERK

BY_____
    DEPUTY CLERK

NILAY KAMAL PATEL, RACHEL A.        )
GLADSTONE, ELIJAH BLOW, and          )
AVERY ARROYO,                                        )
                                                                    )
            Plaintiffs,                                       )
                                                                    )
      v.                                                          )        Case No. 5:20-cv-61
                                                                    )
UNIVERSITY OF VERMONT AND         )
STATE AGRICULTURAL COLLEGE,      )
                                                                    )
            Defendant.                                    )

**DECISION ON MOTION TO DISMISS AND RENEWED MOTION TO DISMISS**
**(Docs. 63, 69)**

In this putative class action, students at the University of Vermont ("UVM") seek to

recover contract damages for "the difference in value of live in-person instruction versus online

distance learning, as well as the value of the unused portion of on-campus housing costs in UVM

residence halls and other housing . . . along with the value of the unused portion of each meal

contract and the value equal to a prorated share of fees." (Am. Compl., Doc. 65 ¶ 31.)   The case

arises from the migration of the bulk of university instruction to an on-line format during the

spring of 2020 due to the COVID-19 health crisis.

On March 15, 2021 the court dismissed claims relating to the room, board, and

comprehensive fee portion of the lawsuit on the ground that reduction or reimbursement in the

event of a health emergency was excluded by the language of the contract between the parties.

(Doc. 57.)[1]   The March 15 decision permitted Plaintiffs' claims for refund of tuition to proceed

_____

[1] In a supplemental order dated April 7, 2021 the court dismissed as moot the portions of
the counts that concern parking fees.   (Doc. 62.)

beyond the initial review afforded by the motion to dismiss. In the court's view, the terms of the "implied-in-fact contract" between the students and the university would have to await factual development.

Since the ruling on the motion to dismiss, a new issue has arisen. Neither of the two original named plaintiffs, Nilay Kamal Patel and Rachel A. Gladstone, personally paid any tuition to UVM for the spring semester 2021. UVM seeks the dismissal of these two plaintiffs under Fed. R. Civ. P. 12(b)(1) on standing grounds. The court heard argument on the standing issue on June 7, 2021. The court has also considered the parties' post-hearing supplemental briefs. (Docs. 74, 75.)

## Background

Mr. Patel was an exchange student from the University of Leeds in Britain. (*See* Decl. of Kim Howard, Doc. 63-4.) The parties agree that UVM and the University of Leeds operate a student exchange program under which students from one school may attend the other without paying tuition directly to the university they are visiting. In Mr. Patel's case, the tuition requirement for his semester abroad at UVM was satisfied by whatever he paid to Leeds. (His attorneys were unable to say at oral argument whether he paid anything at all at Leeds.)

Ms. Gladstone's tuition was covered in full by a combination of scholarship aid provided through UVM and federal Pell grants provided by the United States government; she will not be required to repay any of the scholarships, grants, or awards. (*See* Decl. of Marie Johnson, Doc. 63-2.) The combination of these two sources exceeded her tuition obligation by approximately $1,000. (*Id.* ¶ 6.) This amount was applied to her room and board costs. At the end of the spring 2020 semester, she received a partial refund from UVM which offset all except

2

$123.00 of her student loan obligation for the semester. (Aff. of Pls.' damages expert Mark Kantrowitz, Doc. 66-1 ¶ 6.) Ms. Gladstone has now successfully graduated from UVM.

**Analysis**

The proposed dismissal of Mr. Patel and Ms. Gladstone from this lawsuit would not end the case. The First Amended Class Action Complaint ("Amended Complaint") includes two new plaintiffs who paid tuition to UVM. The narrow issue presented by the current motion to dismiss concerns the standing of Mr. Patel and Ms. Gladstone only.[2]

## I.    Rule 12(b)(1) Standard

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it . . . .'" *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). Such jurisdiction is lacking where constitutional (Article III) standing is absent. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016). "[S]tanding must be assessed as to each plaintiff . . . ." *Seife v. United States Dep't of Health & Human Servs.*, 440 F. Supp. 3d 254, 272 (S.D.N.Y. 2020). This is also true in class actions: "[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)); *see also TransUnion LLC v. Ramirez*,

---

[2] UVM initially sought dismissal of the entire case on standing grounds (Doc. 63) but the subsequently-filed Amended Complaint (Doc. 65) added two more named plaintiffs, Elijah Blow and Avery Arroyo. UVM does not seek dismissal as to Mr. Blow and Mr. Arroyo but has renewed its motion to dismiss as to Mr. Patel and Ms. Gladstone. (Doc. 69.) The court analyzes both motions together here.

141 S. Ct. 2190, 2208 (2021) ("Every class member must have Article III standing in order to recover individual damages.").

UVM has attached evidence outside the pleadings in support of its motion to dismiss: the declarations of Ms. Johnson and Ms. Howard cited above. Thus the Rule 12(b)(1) motion is "fact-based" and Plaintiffs "need to come forward with evidence of their own to controvert that presented by [UVM] 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Carter*, 822 F.3d at 57 (ellipsis in original; quoting *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)). "However, the plaintiffs are entitled to rely on the allegations in the Pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Id.*

## II.    Plaintiffs' Request for Discovery

Plaintiffs argue that they are entitled to discovery if UVM's motion is "treated as a summary judgment motion." (Doc. 66 at 4.) According to Plaintiffs, proof of some of the facts that UVM has asserted "are solely within its control—such as how it allocates scholarship money and how its private grants and scholarships are funded, awarded and managed." (*Id.*) The court rejects that argument.

The court is not treating UVM's motion as one for summary judgment under Fed. R. Civ. P. 56. "The only relevance of Rule 56 to a motion under Rule 12(b)(1) is that a body of decisions has developed under Rule 56 that offer guidelines which assist in resolving the problem encountered if the affidavits submitted on a 12(b)(1) motion should reveal the existence of factual problems." *Exch. Nat'l Bank of Chicago*, 544 F.2d at 1131. No such factual problems

4

are present here.  The detailed facts that Plaintiffs say are solely within UVM's control are not essential for resolution of the motion.

## III.  Constitutional Standing

Traditional standing doctrine takes two forms: constitutional and prudential. *See generally* 15 Wm. Moore et al., *Moore's Federal Practice – Civil* § 101.22 (3d ed. 2021). "Constitutional standing is grounded in Article III's provision that limits the jurisdiction of the federal courts to cases and controversies." *Id.*; *see also TransUnion*, 141 S. Ct. at 2203; *California v. Texas*, 141 S. Ct. 2104, 2113 (2021); *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016).  Prudential standing is a judge-made doctrine further defining which plaintiffs may bring particular types of claims. *Am. Psychiatric Ass'n*, 821 F.3d at 358.

The parties and the court are primarily concerned here with constitutional standing. Constitutional standing has three traditional elements: (1) the plaintiff must have suffered an injury in fact (an invasion of a legally protected interest that is concrete, particularized, and actual or imminent); (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury is redressable by a favorable decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see also McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 299–300 (2d Cir. 2021).  "'The party invoking federal jurisdiction bears the burden of establishing' each element of standing, which 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at successive stages of litigation.'" *McMorris*, 995 F.3d at 300 (quoting *Lujan*, 504 U.S. at 561); *see also TransUnion*, 141 S. Ct. at 2207.

UVM argues that "Plaintiffs have no injury in fact because they did not actually pay any tuition to UVM in Spring 2020." (Doc. 63-1 at 8.)  Plaintiffs attack that argument as "conflat[ing] the contractual concepts of consideration and damages with the constitutional concept of 'injury in fact' required under Article III." (Doc. 66 at 2.)  Plaintiffs argue that they were injured because "Defendant breached a contract" and because Plaintiffs "did not receive the in-person classes Defendant promised to provide." (Doc. 66 at 5; *see also* Doc. 74 at 5 (asserting that Plaintiffs were injured because "the quality of the overall educational experience was significantly less than promised.").)  In its reply, UVM insists that Mr. Patel and Ms. Gladstone's breach-of-contract claims cannot satisfy the elements of Article III standing. (Doc. 71 at 3.) UVM further argues that the court need not resolve the parties' disagreement over the "injury in fact" element because Mr. Patel and Ms. Gladstone's claims fail to satisfy the traceability and redressability elements. (*Id.*)

The court recognizes that injury-in-fact is the "first and foremost of standing's three elements." *Spokeo*, 136 S. Ct. at 1547 (cleaned up).  In this case, however, the court elects to focus on the redressability element.  The court requested additional briefing on that issue (Doc. 73) and has considered the parties' responses (Docs. 74, 75).  Plaintiffs have the burden to establish that their injury "would likely be redressed by the requested judicial relief." *McMorris*, 995 F.3d at 300 (quoting *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020)).  The court begins by considering the relief that Mr. Patel and Ms. Gladstone are requesting.

The parties have significantly different views on that point.  UVM argues that "'disgorgement' of tuition is the sole economic remedy" sought by any of the plaintiffs. (Doc. 71 at 1 n.1.)  Mr. Patel and Ms. Gladstone contend that their injury is "not simply the loss of Plaintiffs' tuition—it is the breach of a promise to provide in-person classes in a campus

environment." (Doc. 74 at 5.) And they maintain that they seek consequential damages for that alleged injury, not just "restitution" of any tuition or consideration they paid. (*Id.* at 11.) They refer to paragraph 31 of the Amended Complaint, which states that Plaintiffs seek, among other things, "damages, including but not limited to an amount representing the difference in value of live in-person instruction versus online distance learning." (Doc. 65 ¶ 31.) That request for damages is incorporated into each of the six counts in the pleading. (*Id.* ¶¶ 51, 59, 67, 73, 78, 83.)

Although the plaintiffs continue to seek the return of room, board and fees, the court has previously dismissed these claims. (*See* Doc. 57.) The remaining claims—Counts I and IV—are most obviously and naturally for tuition reimbursement. (Indeed, those counts are brought by members of the putative "Tuition Class.") A simple table illustrates:

| Count | Cause of Action | Relief Sought |
|-------|-----------------|---------------|
| Count I | Breach of contract and covenant of good faith and fair dealing | "equitable remedy: . . . disgorgement of the difference between the value of one half a semester of online learning versus the value of one half a semester of live in-person instruction in brick and mortar classrooms." (Doc. 65 ¶ 58.) |
| Count IV | Unjust enrichment | "return [of] a portion of the monies paid in tuition to Plaintiffs and other members of the Tuition Class." (Doc. 65 ¶ 77.) |

Other portions of the Amended Complaint describe the damages sought as the return of money paid by Plaintiffs and retained by UVM. These include the "Request for Relief" which seeks a declaration that UVM has "wrongfully kept monies paid for tuition . . . and are therefore entitled to damages as well as an order that UVM "disgorge amounts wrongfully obtained for on-campus tuition" and "enjoining [UVM] from retaining the pro-rated, unused monies paid for tuition . . . ." (Doc. 65 ¶ 88.) Similarly, within the body of the Amended Complaint, Plaintiffs repeatedly allege that UVM has "retained tuition monies paid by Plaintiffs and other members of the Tuition Class, without providing them with the benefit of their bargain." (*Id.* ¶ 57, *see also*

*id.* ¶¶ 75–76.)  In short, Plaintiffs take pains in the Amended Complaint to sue for the return of tuition received by UVM.  They seek "disgorgement" or the return of "wrongfully kept monies." These claims are declaratory or injunctive.

At the same time, the Amended Complaint appears to request consequential damages.[3] That request appears in paragraph 31 and is incorporated into each of the numbered counts. UVM argues that the requested "damages" are "just another way of describing Plaintiffs' request for refunded tuition."  (Doc. 75 at 6.)  That might be so, but the court is mindful that it is the plaintiffs who define their claims and their requested relief.  *See Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 203 (2d Cir. 2013) ("The plaintiff is the master of the complaint . . . .").  In any event, such damages would run contrary to long-established precedent that courts do not seek to measure the value of education.  (*See* Doc. 57 at 8.)  By claiming the return of an overpayment, Plaintiffs seek to avoid the consequences of this line of authority.  But seeking return of an overpayment becomes difficult if you never made a payment in the first place.

## A.    Mr. Patel

The case of Mr. Patel is the easier of the two.  UVM and the University of Leeds permit one another's students to attend as exchange students without paying tuition to the school the students are visiting.  Over time, the universities seek an equal exchange of visiting students. Mr. Patel attended UVM on this basis.  Now, disappointed in the value of the online education he

---

[3] In their supplemental response, Mr. Patel and Ms. Gladstone also suggest that they are "at least entitled to nominal damages for the alleged violation." (Doc. 74 at 12.)  However, the Amended Complaint does not mention nominal damages.  The pleading does seek an award of "such other and further relief as may be just and proper." (Doc. 65 at 19.)  But the court declines to deem that boilerplate recital as a request for nominal damages.  *See Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 142–43 (2d Cir. 1994) (declining to read a nominal-damages claim into boilerplate prayer for "such other relief as the Court deems just and proper").

received in the spring semester, he seeks "disgorgement" and the return of wrongfully kept monies. But UVM received no money from him or from the University of Leeds. His injury is not redressable because the court cannot fashion an order that UVM return or "disgorge" money it never received.

And to whom should the money go? It cannot be sent to Mr. Patel because he has paid nothing himself. It cannot be sent to the University of Leeds because that institution did not pay anything either. At most, UVM could be ordered to increase the credit of the student exchange in favor of Leeds. Had UVM sent Mr. Patel back to Leeds on the day he arrived for health reasons, the two universities might have reached such an understanding. Mr. Patel would not have counted. But Mr. Patel wants money returned to him—not some adjustment of the obligations between the two universities—and the court is unable to fashion an order that money which Leeds never paid and UVM never received be returned to him. His disappointment in his diminished experience at UVM is likely very real—certainly the court credits it as real for purposes of the motion to dismiss—but this is an unredressable injury as pled by the plaintiffs.

### B.   Ms. Gladstone

Ms. Gladstone's case is similar. In her case, her tuition was fully covered by scholarships and grants from UVM and the federal government. Unlike Mr. Patel, money was actually paid on her behalf to UVM. Most of this money came from UVM and was credited from the various scholarship programs to her tuition account. She seeks a refund of some percentage of this money to her. Since she has graduated, she has no future obligation to UVM. Like Mr. Patel she seeks "disgorgement" of money directly to her. The government also made payments through Pell grants on her behalf. She seeks the refund of some of this money directly to herself.

Neither UVM nor the federal government—her two funding sources for tuition—has any interest in recovering money from UVM for any alleged overpayment. Certainly from UVM's perspective, there is nothing to repay. The federal government has issued guidance that permits universities to retain Pell grants covering periods of online learning due to the COVID restrictions.

The court recognizes that Ms. Gladstone—entirely understandably—would like a refund, but she never made a payment in the first place. In seeking equitable remedies such as disgorgement or a refund, Ms. Gladstone avoids the general prohibition against "educational malpractice" awards. But the equitable remedy has a limitation. It permits the return of money to the person who overpaid, not to a student who did not pay herself.

Plaintiffs compare Ms. Gladstone to a student who receives financial assistance from a parent or grandparent. (Doc. 66 at 12.) Courts routinely deny standing to the parents of university students despite the fact that the parents paid for the student's tuition and fees. *Meissner v. Syracuse Univ.*, No. 5:20-CV-839 (TJM/ATB), 2021 WL 1536676 (N.D.N.Y. Apr. 13, 2021); *Espejo v. Cornell Univ.*, No. 3:20-CV-467 (MAD/ML), 2021 WL 810159 (N.D.N.Y. Mar. 3, 2021); *Bergeron v. Rochester Inst. of Tech.*, No. 20-CV-6283 (CJS), 2020 WL 9380794 (W.D.N.Y. Dec. 18, 2020); *Metzner v. Quinnipiac Univ.*, No. 3:20-cv-00784 (KAD), 2021 WL 1146922 (D. Conn. Mar. 25, 2021). But these denials are because the courts concluded that the injured person is the person who made the contract—the student—not the parent who paid the tuition and fees. These cases focus on injury, not redressability, and do not suggest that a court can redress the injury of a student whose tuition is fully covered by scholarships and grants by ordering disgorgement.

Ms. Gladstone's attorneys have been zealous in proposing alternatives measures of damage for her.  They suggest that she lost a semester of eligibility for her Pell grant and could have used it at another institution for better effect.  But she has graduated and has no further eligibility under any circumstances.  In a more fanciful vein, counsel have suggested that she could receive compensation for the road not taken: the chance to attend a different university for the same cost with an improved level of education.  Perhaps.  But her decision to complete her education online at UVM does not create an overpayment at UVM.

## Conclusion

The court GRANTS the motions to dismiss (Docs. 63, 69) with respect to plaintiffs Gladstone and Patel on grounds of constitutional standing.  Their alleged injuries are not redressable by the requested judicial relief.  Since this dismissal as to those plaintiffs is for lack of subject matter jurisdiction, the dismissal is without prejudice.  *Carter*, 822 F.3d at 54.

Dated at Burlington, in the District of Vermont, this 22nd day of July, 2021.

Geoffrey W. Crawford, Chief Judge
United States District Court

11