U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 OCT -1  PM 4: 38

CLERK

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

NILAY KAMAL PATEL, RACHEL A.　)
GLADSTONE, ELIJAH BLOW, and　)
AVERY ARROYO,　)
　)
　　Plaintiffs,　)
　)
　　v.　)　　　Case No. 5:20-cv-61
　)
UNIVERSITY OF VERMONT AND　)
STATE AGRICULTURAL COLLEGE,　)
　)
　　Defendant.　)

## DECISION ON MOTION FOR RECONSIDERATION
### (Doc. 77)

The COVID pandemic arrived on American shores in earnest in March 2020 with

consequences for most of our residents.  In the case of colleges and universities, these

consequences included the widespread use of remote learning.  This development disappointed

many who preferred to be on-campus, learning in live classrooms.  In the weeks following

university decisions to reduce or eliminate on-campus instruction, students and their counsel

filed lawsuits across the United States seeking refunds of tuition payments and other

expenditures.  This lawsuit, filed in April 2020, is no exception.

The case has passed through two early phases.  The court has previously ruled that the

contract language in the student handbook and similar materials bars a claim for refund of room

and meal charges.  (Doc. 57.)  At the same time, the court declined to dismiss the claim for

tuition refunds and allowed that part of the case to go forward.  After this ruling, the parties and

the court learned that the two named plaintiffs—Nilay Patel and Rachel Gladstone—had not

actually paid tuition.  Mr. Patel was an exchange student from the University of Leeds in Britain.

UVM has a reciprocal agreement with Leeds permitting exchange students to attend without paying tuition to the host institution. Ms. Gladstone received scholarships and grants in excess of the tuition for her final spring semester. She graduated successfully in May 2020.

The news that the named plaintiffs had not actually paid tuition did not end the case. They were quickly joined by two more students who did pay tuition. These students seek to serve as class representatives in a class action aimed at collecting tuition refunds for thousands of UVM students. Issues concerning the terms of the implied contract between the university and its students and the application of these terms to a pandemic emergency as well as the suitability of the class action vehicle remain for later decision.

The court granted the motion to dismiss Mr. Patel and Ms. Gladstone from the lawsuit on standing grounds. (Doc. 76.) In the court's view, they lacked constitutional standing to seek the return of tuition they had not actually paid. They have filed a timely motion for reconsideration. (Doc. 77.) UVM has filed an opposition (Doc. 83) and Plaintiffs filed a reply on August 26, 2021 (Doc. 85).

The court turns to the five issues raised by Plaintiffs. The court considers these issues in the context of the usual standard for reconsideration. *See Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (alterations in original) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013)) (noting strict reconsideration standard: "[A] party may move for reconsideration and obtain relief only when the [party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.").

## I.     Need for Discovery

In ruling on the standing question, the court relied upon one core fact:  neither Mr. Patel nor Ms. Gladstone paid tuition at UVM during the spring semester of 2020.  This is hardly a fact that lies within the exclusive knowledge of one party or another.  Nor is it disputed.

In the case of Mr. Patel, there is no doubt that exchange students from the University of Leeds who attend UVM for a semester do not pay tuition to UVM.  The same is true when a UVM student travels to Leeds.  When the court asked Plaintiffs' counsel whether Mr. Patel paid tuition at Leeds for his spring term at UVM, the attorneys did not know.  They now question whether he ever arrived at UVM at all.  For purposes of standing, however, there is no dispute that Mr. Patel's tuition was covered by the exchange arrangement in place between UVM and Leeds.  Mr. Patel is in the best position to tell the court whether he paid any tuition in Britain. He has made no such allegation even now when it is clear that the payment of tuition is central to the court's resolution of the standing issue in his case.  Discovery into the history and administration of the exchange agreement between the two schools will not change the fact that he paid no tuition for his education at UVM.

In the case of Ms. Gladstone, there is no doubt that the total of her scholarships and grants for the spring semester in 2020 exceeds the amount of her tuition.  The university has provided information from outside of the complaint that following university policy, it credited these moneys first to tuition and second to room and board and other costs.  Plaintiffs have retained an expert to examine this proposition.  Mr. Kantrowitz has submitted a report.  He has broad expertise in student financial aid.  He reviewed the details of Ms. Gladstone's financial aid during the spring semester of 2020.  He did not report that she paid any tuition either.  Instead, he

3

reported that she borrowed $3,503 in student loans and received a refund of $3,380 with a net balance due of $123.  (Doc. 66-1.)

There is no mystery here.  Mr. Kantrowitz does not dispute UVM's statement that Ms. Gladstone's grants exceeded her tuition obligation.  He states only that "[m]oney is fungible." (Doc. 66-1 ¶ 5.)  He describes her student loan and her refund.  It is undisputed that UVM voluntarily refunded a portion of its students' living expenses after closing meal halls and residences.  Any doubts about the details of Ms. Gladstone's payments are resolved by the scrutiny these received from her own expert.  Mr. Kantrowitz has the expertise to determine whether Ms. Gladstone paid tuition.  Clearly she did not since Mr. Kantrowitz identifies only a shortfall of $123 following her refund of living expenses.

Ms. Gladstone argues that she needs discovery to find out if UVM really applies scholarship aid first to tuition as stated by Marie Johnson, Director of Student Financial Services, in her affidavit.  (Doc 63-2.)  Ms. Johnson supplied a copy of the written UVM policy concerning the order of payment assignment.  (Doc. 63-3.)  This policy requires the prioritization of "charges in the following order" with exceptions for parking tickets and other exceptions not relevant here.  The order is unsurprising:  tuition first followed by the "comprehensive fee," room charges, meal plan charges, and other fees.  Ms. Gladstone, her expert, and her attorneys all know the amount of her tuition ($20,640), her grants and scholarship ($21,722), and the manner in which UVM applied these grants first to her tuition and second to her other obligations. Discovery will not change the simple math that demonstrates that she did not pay tuition herself during the spring semester of 2020.

The details of Mr. Patel and Ms. Gladstone's tuition payments are sufficiently known to both sides that no discovery on these issues is necessary or appropriate.

**II.     The Relief Sought and the "Educational Malpractice" Doctrine**

The court followed the plaintiffs' lead in identifying the relief sought as a refund of tuition. That is how the Amended Complaint is drawn. Plaintiffs argue in their motion for reconsideration that it seeks something different from a refund: "consequential damages." They point to paragraph 31 of the Amended Complaint, which seeks "an amount representing the difference in value of live in-person instruction versus online distance learning, as well as the value of the unused portion of [housing and meal costs and student fees.]" (Doc. 65 ¶ 31.) That request is incorporated into each of the six counts in the pleading. (*Id.* ¶¶ 51, 59, 67, 73, 78, 83.)

Vermont decisional law recognizes two primary measures of money damages for breach of contract: the loss of expectancy, frequently defined as loss of profit, or, alternatively, the return of some or all of the cost of performance to the non-breaching party through a restitution-based award. *Foti Fuels, Inc. v. Kurrle Corp.*, 2013 VT 111, ¶ 37, 195 Vt. 524, 90 A.3d 885. These alternatives are consistent with contract remedies in American law generally. *Compare* Restatement (Second) of Contracts § 347 *with* Restatement (Third) of Restitution § 38.

The expectancy measure of damages model is a poor fit for Plaintiffs' claim since it would require the factfinder to determine the value of a single semester of in-person education, reduced by its cost to the student, in order to calculate the net benefit. From this amount, the factfinder would subtract the benefit, if any, of remote attendance. These calculations would be subject to "the tests of causation, certainty and foreseeability, and, in addition, be reasonably supposed to have been in the contemplation of both parties at the time they made the contract.*"* *A. Brown, Inc. v. Vt. Justin Corp.*, 148 Vt. 192, 196, 531 A.2d 899, 902 (1987). The simple recitation of the damage formula illustrates the impossibility of applying it to the type of breach alleged here.

The restitution measure of damages presents doctrinal difficulties as well. These include the difficulty of defining with sufficient certainty the percentage of the student's tuition payment that should be returned to him or her. But the court agrees with the plaintiffs that these are issues for the merits, not for standing. The standing issue which the court identified as "redressability" is whether a restitution award of tuition is feasible to a student who has paid nothing. In the context of breach of contract, the remedy of restitution allows the recovery of some portion of the consideration paid by the non-breaching party. It is a measure of damages that authorizes the return of money wrongfully held by the defendant. But before one can receive a refund of the tuition or other payments, one has to pay it. There can be no restitution order for someone who has incurred no cost of performance.

III.   **Nominal Damages; Injury-In-Fact**

As an alternative, Plaintiffs now seek a nominal award. The Supreme Court has recently held that nominal damages can redress a past injury. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021). But the Amended Complaint makes no claim for nominal damages and the boilerplate request for "such other relief as may be just and proper" is not a request for nominal damages. (*See* Doc. 76 at 8 n.3.) The case involves no fee-shifting statute that would entitle Plaintiffs' counsel to an award of fees for obtaining a nominal judgment. Plaintiffs who have no economic stake in the outcome of the case would make poor candidates for class representatives. Plaintiffs have amended their complaint to include other students who paid tuition. Awarding nominal damages because these two plaintiffs cannot prove compensable loss rewards a legal fiction. Under the circumstances of this case in which both the university and the students and their families have struggled to adjust to pandemic conditions, the court will not pretend that an injury is present when none is shown.

The court declines to permit these defendants to amend their claim to seek nominal damages on reconsideration. The court and UVM are both entitled to rely on the amended complaint and the prior briefing seeking a refund of an alleged overpayment or, alternatively, a compensatory award as the measure of damages. It is too late in the day to claim that these plaintiffs actually seek only nominal damages.

On the issue of injury, the court observes that one advantage of the motion for reconsideration is the opportunity to review the standing analysis. The court previously described the barrier to the claims of Mr. Patel and Ms. Gladstone as one of "redressability." The court reasoned that it could not issue an order returning tuition payments to a student who never made any. On reconsideration, the obstacle may better be described as the absence of "injury-in-fact." The court previously sought to avoid ruling on that basis because there appeared to be an unsettled question of law as to whether plaintiffs alleging breach of contract must establish factual harm in order to have Article III standing. (*See* Doc. 73 at 1.) The court now concludes that it should address this issue as part of the standing analysis.

The injury-in-fact requirement is frequently the first considered in assessing the three criteria for standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1547 (2016) (cleaned up) (describing injury-in-fact as the "first and foremost of standing's three elements"). The Second Circuit has described the injury-in-fact requirement as a "low threshold." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (quoting *Ross v. Bank of Am., N.A.*, 524 F.3d 217, 222 (2d Cir. 2008)). But the threshold must nevertheless be met in all cases. A student seeking the return of tuition which he or she has not paid may be described as someone who has suffered no injury since one cannot lose what one never had in the first place.

7

In *Spokeo*, the Supreme Court examined the constitutional requirement of injury-in-fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); *see also Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 997 F.3d 436, 442 (2d Cir. 2021) (alterations in original) (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016)) ("To demonstrate injury in fact, a plaintiff must show the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical."). "[S]tanding in federal court is a question of federal law, not state law." *Maddox*, 997 F.3d at 444 n.10 (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013)). But "the invasion of interests protected by state law can support Article III standing." *Id.* at 439. State law protects contract rights. *See Colon de Mejias v. Lamont*, 963 F.3d 196, 203 (2d Cir. 2020) ("State law determines whether an agreement is an enforceable contract . . . ."). As the court previously noted, the parties in this case do not dispute that Vermont contract law applies. (Doc. 57 at 13.)

## A.   Invasion of a Legally Protected Interest

Mr. Patel and Ms. Gladstone argue that they "suffered an invasion of a legally protected interest when Defendant failed to provide the in-person classes it promised." (Doc. 66 at 5.) The court agrees that the rights and benefits conferred by a contract are legally protected interests. *See, e.g.*, *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 243 (2d Cir. 2007) (employee welfare benefit plan trustee had standing where her plan "was involved in a contractual relationship" with pharmacy benefit management

services provider).  UVM does not appear to argue that Plaintiffs have failed to allege this prong

of the injury-in-fact element.

### B.    Particularity

The claims of Mr. Patel and Ms. Gladstone for the return of tuition they did not pay may

satisfy the element of particularity.  Like the plaintiff in *Spokeo*, they had an identifiable legal

relationship with the defendant.  Plaintiffs' difficulty on the injury-in-fact prong stems from the

"concreteness" requirement.

### C.    Concreteness

The court concludes that the harm claimed is not concrete since it never happened.

Because they paid no tuition, a refund—whether described as "disgorgement" or "consequential

damages"—cannot take place.  On reconsideration, the court adjusts the standing analysis to

identify the shortcoming in the claims of these two plaintiffs to include a lack of injury-in-fact

because the "concreteness" requirement is not satisfied.

Plaintiffs argue that they were injured because "Defendant breached a contract" and

because Plaintiffs "did not receive the in-person classes Defendant promised to provide."

(Doc. 66 at 5; *see also* Doc. 74 at 5 (asserting that Plaintiffs were injured because "the quality of

the overall educational experience was significantly less than promised.").)  To determine

whether that alleged harm is "concrete," the court reviews the Supreme Court's recent

pronouncements on that issue.  Courts evaluating whether a harm is "concrete" should "assess

whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally'

recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*,

141 S. Ct. 2190, 2204 (2021) (quoting *Spokeo*, 578 U.S. at 341).  Traditional "tangible harms"—

"physical harms and monetary harms"—qualify as "concrete" injuries. *Id.*  Certain intangible

9

harms can also be concrete, including "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.*

The court begins with the *Spokeo* Court's statement that "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549. Does that mean that Article III standing requires a concrete injury even in the context of a breach of contract? Some courts have answered no, or that a breach is itself a concrete harm.[1] If that view is correct, then Mr. Patel and Ms. Gladstone would have no trouble with the "concreteness" prong.

But that view is not unanimous. Other courts hold that *Spokeo*'s logic extends to breach-of-contract claims. *See Svenson v. Google Inc.*, No. 13-cv-04080-BLF, 2016 WL 8943301, at *10 (N.D. Cal. Dec. 21, 2016) (breach-of-contract plaintiff "still must show the *fact* of injury in order to have Article III standing"). At least one commentator has reached the same conclusion. *See* F. Andrew Hessick, *Standing & Contracts*, 89 Geo. Wash. L. Rev. 298, 313 (2021) ("The logic of *Spokeo*—that standing cannot rest on violations of legal rights that do not result in factual harms—extends to suits alleging breach of contract.").

---

[1] *See Amrhein v. eClinical Works, LLC*, 954 F.3d 328, 331 (1st Cir. 2020) (quoting *Katz v. Pershing, LLC*, 672 F.3d 64, 72 (1st Cir. 2012)) (invasion of a common-law right, "including a right conferred by contract" is an intangible loss that is "actionable without wallet injury"); *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 571 (N.D. Ill. 2020) (breach of contract confers Article III standing even if plaintiff does not claim the breach caused any monetary loss or other concrete harm); *In re Google Referrer Header Priv. Litig.*, 465 F. Supp. 3d 999, 1011 (N.D. Cal. 2020) ("[T]he breach of a contractual right is a concrete injury for Article III purposes . . . ."); *Culwick v. Wood*, 384 F. Supp. 3d 328, 339 (E.D.N.Y. 2019) (concluding that breach of contract is a concrete intangible harm; distinguishing *Spokeo* because "[u]nlike the *procedural* nature of the right at issue in *Spokeo*, contract rights are *substantive*, and their invasion creates standing to sue, as courts have recognized for generations"); *Rodriguez v. Universal Prop. & Cas. Ins. Co.*, No. 16-60442-CIV-COHN/SELTZER, 2016 WL 8678879, at *3 (S.D. Fla. Aug. 19, 2016) ("A breach of contract—even one that does not yield immediately cognizable money damages—qualifies as 'a harm that has traditionally been regarded as a basis for a lawsuit in English or American courts.'").

10

The Supreme Court has not ruled on the question of whether a breach of contract gives rise to standing in the absence of concrete injury. *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020) came close. *Thole* concerned an alleged violation of a defined-benefit retirement plan— the traditional pension paid in a fixed amount for the retiree's lifetime.  Plaintiffs alleged a violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq., claiming that the plan's fiduciaries had mismanaged the assets.  The difficulty for the named plaintiffs was that both had received every penny of their pensions to date and retained every right to continue to receive these lifetime payments.  In upholding the dismissal of the complaint on standing grounds, the Court described the "defined-benefit plan [as] more in the nature of a contract" than a defined-contribution plan. *Thole*, 140 S. Ct. at 1620.  The plaintiffs failed to demonstrate concrete injury because they had received their pensions and "[w]inning or losing this suit would not change the plaintiffs' monthly pension benefits." *Id.* at 1622.

The court follows *Spokeo* and *Thole* in requiring allegations of concrete injury.  There is no basis for defining the constitutional requirement of standing differently for violations of statute and contract.  Extending standing to a party to a contract who has not been injured despite a breach while holding statutory violations to a more restrictive standard places a higher value on violations of contract rights than on statutory violations.  Standing doctrine does not work that way.  For reasons of separation of powers, it imposes the same case-or-controversy requirement on all claims, including the requirement of concrete injury.  The presence of a breach or violation of the plaintiff's legal right is only one portion of the standing requirement.  The requirement of factual injury ensures that the courts do not become drawn into theoretical controversies such as the present dispute over whether a student who was not required to pay tuition may be entitled to its refund.

**IV.    Interlocutory Appeal**

Plaintiffs seek entry of final judgment under Fed. R. Civ. P. 54(b) as to their claims only so that they may take an immediate appeal as of right.  The court will not enter final judgment at this time with respect to the claims of Mr. Patel and Ms. Gladstone.  This is not a case in which the court can determine that there is "no just reason for delay."  To the contrary, a piecemeal appeal of the claims of two students who paid no tuition would not advance the progress of the litigation at all.  As in the case of an interlocutory appeal under 28 U.S.C. § 1292 (which the plaintiffs do not seek), an appeal will likely result in the suspension of the preparation of the main case until the district court knows the outcome.  Instead, any appeal will occur in the normal course at the end of the case after entry of final judgment as to all claims.

**Conclusion**

The Motion for Reconsideration and to enter partial final judgment as to Mr. Patel and Ms. Gladstone (Doc. 77) is DENIED.

Dated at Burlington, in the District of Vermont, this 1st. day of October, 2021.

Geoffrey W. Crawford, Chief Judge
United States District Court